LEVINE, J.
The issue presented for our review is whether the trial court erred in granting a motion to suppress, where appellee failed to stop in response to the deputy’s siren, lights, and multiple orders to stop communicated over the deputy’s P.A. system. We find the deputy had probable cause to stop appellee for the offense of fleeing or attempting to elude a law enforcement officer, and therefore reverse the granting of the motion to suppress.
A deputy sheriff was called to an address based on an anonymous call reporting a “suspicious incident” regarding people inside a vacant house. When the *61 deputy arrived, he noticed appellee standing in or near a vehicle in the vacant house’s driveway. The deputy activated his overhead lights and aimed his spotlight on appellee’s vehicle. The deputy’s vehicle was not blocking appellee’s vehicle, since at this point appellee backed out and started to drive southbound. The deputy followed appellee as appellee drove forward.
The deputy switched on his siren, kept his police vehicle’s lights on, and on multiple occasions ordered appellee to stop over his vehicle’s P.A. system. Meanwhile, despite the siren, lights, and orders, appellee kept driving and made five turns while the deputy followed one or two car lengths behind. Neither appellee nor the deputy went over approximately “10 miles an hour.” The deputy followed appellee for just under five minutes. Another marked unit came behind the deputy’s vehicle. Eventually a third marked unit blocked appellee’s vehicle after appellee drove into a townhouse community. Once appellee was stopped, the deputy was then able to see, and later identify appellee. Subsequently, appellee was charged with one count of fleeing or attempting to elude a law enforcement officer while in a motor vehicle.
Appellee moved to suppress his identification, arguing that the post-stop observation of appellee was the result of an improper stop. The state argued that ap-pellee’s conduct, although not constituting reasonable suspicion for a burglary, did constitute the crime of fleeing or attempting to elude. The trial court granted the motion to suppress the post-stop identification of appellee, and stated the following: '
In this case there was a tip of somebody’s breaking into a house. There’s a car in the driveway. The person who called in the tip said there was a pickup truck. The defendant was in a Mustang, completely different car. The car pulled out, travels at 10 miles per hour. Police officer followed with lights on, siren on and off and PA. There were five turns, and the car was stopped in five minutes when it went into a neighborhood and that the car pulled in front of [appellee], but there’s no reasonable suspicion for the stop, and I’ve got to look at the Ray opinion [Ray v. State, 40 So.3d 95 (Fla. 4th DCA 2010) ], and I have to look at the rationality of— in Green [Green v. State, 530 So.2d 480 (Fla. 5th DCA 1988) ] and Judge Co-war[t]’s — in the Green opinion. It just makes no sense that you can — when someone doesn’t pull over in 5 minutes, justifying an unlawful stop by charging them with fleeing and eluding. It just doesn’t make sense.
The trial court entered an order granting the motion to suppress. The state appeals the trial court’s granting of appel-lee’s motion to suppress.
When reviewing a trial court’s decision on a motion to suppress, we defer to the trial court’s findings of fact if they are supported by competent, substantial evidence, although we review conclusions of law de novo. Atac v. State, - So.3d -, 38 Fla. L. Weekly D610, 2013 WL 950052 (Fla. 4th DCA 2013); Springer v. State, - So.3d -, 38 Fla. L. Weekly D547, 2013 WL 811673 (Fla. 4th DCA 2013).
Appellant was charged with violating section 316.1935(1), Florida Statutes (2012), which, in pertinent part, provides:
It is unlawful for the operator of any vehicle, having knowledge that he or she has been ordered to stop such vehicle by a duly authorized law enforcement officer, willfully to refuse or fail to stop the vehicle in compliance with such order *62 ... and a person who violates this subsection commits a felony of the third degree.
We find Henderson v. State, 88 So.3d 1060 (Fla. 1st DCA 2012), to be most instructive. In Henderson, a United States Marshal requested assistance from a deputy to stop an armed homicide suspect, who was driving in front of the Marshal on the roadway. Deputies eventually drove behind the armed suspect, and put on their lights and sirens to get the suspect to stop. The suspect slowed, but then continued to drive for one to two miles. The suspect never sped or violated any traffic laws. The suspect stopped only when he was approached by deputies driving from the opposite direction. A firearm was found in the suspect’s vehicle.
The court in Henderson rejected other potential grounds to justify the stop by the deputies. The court found that a warrant issued five hours later did not justify the stop, nor did the application of the “fellow officer rule” since there was no record evidence that the Marshal believed the armed suspect had committed a homicide. However, the Henderson court affirmed the denial of the suspect’s motion to suppress “because appellant’s act of fleeing or attempting to elude [the deputy] and the other officers obviates the necessity of determining whether there was reasonable suspicion or probable cause for the initial attempt to stop.” Id. at 1062 (footnote omitted).
The Henderson court reasoned further that
Ray [v. State, 40 So.3d 95 (Fla. 4th DCA 2010),] is distinguishable, because the court did not characterize the defendant’s brief act of running the stop sign before pulling over as flight, and there was no charge of fleeing or attempting to elude. In our case, when the officers attempted to pull appellant over with lights and sirens activated, appellant continued to drive for nearly two miles, providing probable cause to stop him for violating section 316.1935(2). [The deputy’s] stated reason for the stop has no bearing on whether there was probable cause for the stop.
[[Image here]]
In the case at bar, had appellant pulled over immediately after [the deputy] activated his lights and siren, there would have been insufficient evidence in the record to justify the stop. When appellant continued driving, however, long after the officers had activated their lights and sirens, in combination with the request from the Marshal[ ] to assist in stopping a homicide suspect and the Marshal[ ]’s signal that the gold Kia contained the suspect, [the deputy] did have a reasonable suspicion that a crime had been or was being committed sufficient to warrant the stop.
Id. at 1063.
We find that, like the suspect in Henderson, had appellee remained in the driveway or pulled over after the deputy had activated his lights and siren and utilized the P.A. system, there would have been “insufficient evidence in the record to justify the stop.” Id. Further, we agree with the Henderson court that the Ray decision is “distinguishable.” Id. In Ray, as the trial court recognized, there was no allegation of fleeing or attempting to elude.
In Ray, the defendant stopped his vehicle in the middle of the road, and an officer observed a hand-to-hand transaction between the vehicle and an unknown person. As the defendant drove away, the officer activated her lights. The defendant drove through a stop sign and was pulled over by the officer. The defendant dropped cocaine out of the car window. On appeal, this court found, regarding the hand-to- *63 hand drug transaction, that “there were not enough factors present to support a finding of reasonable suspicion.” Ray, 40 So.3d at 98. Concerning the state’s alternative argument, this court addressed whether the defendant’s running of the stop sign justified the stop. This court found it did not, because “the arresting officer stated she pulled over [the defendant] because of the alleged drug transaction, not because of a traffic law violation.” Id. Further, this court found that the officer’s use of emergency lights evidenced an investigatory stop. This court stated, “When the arresting officer activated her emergency lights to pull over [the defendant], she commenced an investigatory stop without reasonable suspicion. [The defendant’s traffic infraction occurred after the officer turned on her lights.” Id. at 99.
In the present case, appellee argues that, in Ray, the defendant’s act of running the stop sign did not constitute fleeing. However, this was not a conclusion we reached in Ray. Again, the defendant in Ray was not charged with fleeing or attempting to elude, and the argument that the officer had probable cause to stop the defendant for that particular offense was not presented.
The trial court also relied on the “rationale” of the dissent in Green v. State, 530 So.2d 480 (Fla. 5th DCA 1988) (en banc). The trial court was persuaded by the dissent, which would have found that the only way for a defendant not to violate the fleeing or attempting to elude statute, after an officer unlawfully orders a defendant to stop, is by waiving “his constitutional right to freedom from illegal police action.” Id. at 483 (Cowart, J., dissenting).
The majority in Green, in contrast, held that the legality of the initial action by the police became irrelevant when the defendant committed the crime of fleeing or attempting to elude. The majority in Green stated that “[irrespective of the illegality of the initial stop ... the applicable statute ... relating to the offense of fleeing and eluding a police officer, does not require lawfulness of the police action as an element of the offense.” Id. at 481 (quoting Jackson v. State, 463 So.2d 372, 373 (Fla. 5th DCA 1985)). In Green, the majority concluded that, even though the defendant was stopped initially due to an illegal checkpoint, since the defendant did not stop despite hand signals and verbal orders to stop from the police, “[h]is stop for fleeing a police officer pursuant to section 316.1935 ... was valid.” Id.
Lastly, though in a different context, this court has interpreted section 316.1935, Florida Statutes, consistently. Ward v. State, 59 So.3d 1220, 1223 (Fla. 4th DCA 2011). In Ward, this court found that evidence of an uncharged collateral crime prejudiced the defendant, who was convicted of fleeing or attempting to elude law enforcement. Pertinent to our analysis, regarding the two types of fleeing or attempting to elude, this court stated:
Neither of these crimes requires the state to prove the validity of or show the reason for the original pursuit. Instead, the focus is on whether law enforcement’s lights and sirens were activated and whether the defendant knew he or she was being ordered to stop by law enforcement and whether the person chose to defy that order by failing to stop. Simply stated, the underlying reason for the stop itself — at least in this case — was patently irrelevant to the charge of fleeing or attempting to elude.

Id.

We find the trial court erred in suppressing the post-stop identification where the deputy had probable cause that *64 appellee committed the crime of fleeing or attempting to elude in violation of section 316.1935(1), regardless of whether probable cause initially justified the stop of ap-pellee. To accept the trial court’s view in this case would mean that any vehicle signaled to stop by the police, where the vehicle’s driver believes, rightfully or wrongfully, that the stop is improper, would feel justified in not stopping despite the command of law enforcement. See United States v. Orisnord, 483 F.3d 1169, 1182-83 (11th Cir.2007) (explaining the potential for danger involved in vehicular fleeing situations).
In summary, we find that the deputy had probable cause to stop appellee for the crime of fleeing or attempting to elude, justifying the stop of appellee in this ease. We, therefore, reverse and remand for proceedings consistent with this opinion.

Reversed and remanded.

MAY and GERBER, JJ., concur.